# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| MARTINSVILLE CORRAL, INC. <br> d/b/a MARTINSVILLE TEXAS CORRAL, <br> VICTOR A. SPINA, and <br> WILLIAM SPINA, <br><br> Plaintiffs, <br><br> v. <br><br> SOCIETY INSURANCE, <br><br> Defendant. | Case No. 1:16-cv-02487-TWP-MPB |

## ENTRY ON CROSS MOTIONS FOR SUMMARY JUDGMENT

This matter comes before the Court on Cross Motions for Summary Judgment filed by Plaintiffs, Martinsville Corral, Inc. d/b/a Martinsville Texas Corral, Victor A. Spina, and William Spina (collectively, "MCI") ([Filing No. 55](Filing No. 55)), and Defendant Society Insurance ("Society") ([Filing No. 65](Filing No. 65)). MCI initiated this action for breach of contract alleging that Society intentionally and in bad faith failed to defend and indemnify MCI related to claims brought against it by non-party, DirecTV, LLC., ("DirecTV"). Society claims that the insurance policy issued to MCI does not provide coverage for any of DirecTV's claims. Each party has filed a motion for summary judgment. For the following reasons, the Court **DENIES** MCI's Motion for Summary Judgment and **GRANTS** Society's Cross Motion for Summary Judgment.

## I. BACKGROUND

Martinsville Texas Corral owns two restaurants in southern Indiana ([Filing No. 54-4 at 1](Filing No. 54-4 at 1)). Martinsville Texas Corral opened its first Texas Corral restaurant in Martinsville, Indiana in 2009 and opened a second Texas Corral restaurant in Shelbyville, Indiana in 2011 ([Filing No. 54-5 at](Filing No. 54-5 at)

1). Defendants Victor Spina and William Spina each own 50% of Martinsville Texas Corral ([Filing No. 54-5 at 1](Filing No. 54-5 at 1)). Society is an insurance company with its principal place of business in Fond du Lac, Wisconsin. ([Filing No. 68-11 at 9](Filing No. 68-11 at 9).)

**A. The Policy**

On December 6, 2013, Society issued a certain businessowners insurance policy for tavern and restaurant owners (the "Policy") to MCI ([Filing No. 12-1](Filing No. 12-1)). Under the terms of the Policy, Society promised to provide MCI with general business liability coverage, including coverage for sums MCI "becomes legally obligated to pay as damages because of 'bodily injury,' 'property damage,' or 'personal and advertising injury'" to which the Policy applies, and has a duty to defend MCI in any lawsuit seeking such damages. ([Filing No. 12-1 at 71](Filing No. 12-1 at 71)). The Policy defines "property damage" as "[p]hysical injury to tangible property, including all resulting loss of use of that property…" or "[l]oss of use of tangible property that is not physically injured…" ([Filing No. 12-1 at 86](Filing No. 12-1 at 86)). The definition of "property damage" further clarifies that "electronic data is not tangible property" under the Policy ([Filing No. 12-1 at 86](Filing No. 12-1 at 86)). Moreover, the Policy clearly states that it only covers "bodily injury" and "property damage" to the extent it is "caused by an 'occurrence' that takes place in the 'coverage territory' … during the policy period" ([Filing No. 12-1 at 71](Filing No. 12-1 at 71)). An "occurrence" under the Policy "means an accident, including continuous or repeated exposure to substantially the same general harmful conditions" ([Filing No. 12-1 at 85](Filing No. 12-1 at 85)). The Policy also defines "personal and advertising injury" as

> injury, including consequential 'bodily injury,' arising out of one or more of the following offenses:
> a. False arrest, detention or imprisonment;
> b. Malicious prosecution;
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of privacy occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

2

    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services
    e. Oral or written publication, in any manner, of material that violates a person's right to privacy;
    f. The use of another's advertising idea in your "advertisement"; or
    g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

([Filing No. 12-1 at 86](Filing No. 12-1 at 86)).

In addition to the standard liability coverage provided by the Policy, MCI purchased coverage under an Employment-Related Practices Liability Endorsement that was incorporated into the Policy (the "Endorsement") ([Filing No. 12-1 at 24-31](Filing No. 12-1 at 24-31)). Under the Endorsement, Society is required to cover MCI for any damages it "becomes legally obligated to pay resulting from a 'wrongful act'" to which the Endorsement applies and imposes a duty to defend on Society in any lawsuits seeking such damages ([Filing No. 12-1 at 25](Filing No. 12-1 at 25)). The Endorsement defines "wrongful act" to mean

> one or more of the following offenses, but only when they are employment-related:
>     a. Wrongful demotion or failure to promote, negative evaluation, reassignment, or discipline of your current "employee" or wrongful refusal to employ;
>     b. Wrongful termination, meaning the actual or constructive termination of an "employee":
>       (1) In violation of breach of applicable law or public policy; or
>       (2) Which is determined to be in violation of a contract or agreement, other than an employment contract or agreement, whether written, oral or implied, which stipulates financial consideration is due as the result of a breach of the contract;
>     c. Wrongful denial of training, wrongful deprivation of career opportunity, or breach of employment contract;
>     d. Negligent hiring or supervision which results in any of the other offenses listed in this definition;
>     e. Retaliatory action against an "employee" because the "employee" has:
>       (1) Declined to perform an illegal or unethical act;
>       (2) Filed a complaint with a governmental authority or a "suit" against you or any other insured in which damages are claimed;
>       (3) Testified against your or any other insured at a legal proceeding; or

    (4) Notified a proper authority of any aspect of your business operation which is illegal;
 f. Coercing an "employee" to commit an unlawful act or omission within the scope of that person's employment;
 g. Harassment;
 h. Libel, slander, invasion of privacy, defamation or humiliation; or
 i. Verbal, physical, mental or emotional abuse arising from "discrimination".

([Filing No. 12-1 at 30-31](#)). Neither the Endorsement nor the Policy generally provides a definition for the term "employment-related."

Although the Policy generally provided coverage for business liabilities that MCI may incur, it also included several exclusions to its business liability coverage ([Filing No. 12-1 at 74-81](#)). Specifically, Society notes that the Policy excludes coverage for "personal and advertising injury" damages stemming from "Criminal Acts" and "Recording And Distribution Of Material Or Information In Violation Of Law." ([Filing No. 12-1 at 79-80](#); [Filing No. 66 at 11](#)). Under the "Criminal Acts" exclusion, Society is not required to cover MCI for any "'[p]ersonal and advertising injury' arising out of a criminal act committed by or at the direction or the insured" ([Filing No. 12-1 at 79](#)). The "Recording And Distribution Of Material Or Information In Violation Of Law" exclusion further provides that Society is not obligated to cover damages incurred by MCI for

 "[p]ersonal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
  (1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or
  (2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or
  (3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or
  (4) Any federal, state, or local statute, ordinance or regulation, other than the TCPA CAN-SPAM Act or 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing,

dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

(Filing No. 12-1 at 79-80).

B. **The DirecTV Action**

On January 26, 2015, DirecTV, LLC ("DirecTV") filed two lawsuits against MCI, pursuant to the Cable Communications Policy Act of 1984 (the "CCPA"), 47 U.S.C. § 521, *et seq*. (collectively, the "DirecTV Action").[1] *DirecTV, LLC v. Martinsville Corral, Inc*., No. 1:15-cv-00104-JMS-TSB (S.D. Ind. filed Jan. 26, 2015); *DirecTV, LLC v. T.C. of Martinsville, LLC*, No. 1:15-cv-00105-TWP-TAB (S.D. Ind. filed Jan. 26, 2015). In its complaints, DirecTV alleged that MCI used DirecTV's specialized satellite equipment to access DirecTV's television programs that are communicated electronically by DirecTV via satellite (the "Satellite Programming") in its restaurants for commercial gain without paying DirecTV a commercial subscription fee (Filing No. 54-1 at 5, 16).[2] DirecTV also points out that since it also provides residential subscriptions to its Satellite Programming using the same transmission equipment, it is possible for its residential subscribers to remove the equipment from their homes and reinstall it in commercial establishments without DirecTV's knowledge (Filing No. 54-1 at 5, 16). Importantly, however, DirecTV never specifically alleged that MCI removed any transmission equipment in order to access the Satellite Programming for commercial purposes.

---

[1] DirecTV, LLC's separate lawsuits against MCI were consolidated into a single action on July 6, 2015. *DirecTV, LLC v. Martinsville Corral, Inc*., No. 1:15-cv-00104-JMS-TAB (S.D. Ind. July 6, 2015) (order consolidating case with Cause No. 1:15-cv-00105-TWP-TAB).

[2] The Court takes judicial notice of the complaints filed in the DirecTV Action. *See Parungao v. Cmty. Health Sys., Inc*., 858 F.3d 452, 457 (7th Cir. 2017) ("Courts may take judicial notice of court filings and other matters of public record when the accuracy of those documents reasonably cannot be questioned.")

5

DirecTV specifically claimed that MCI (1) violated the CCPA because it "illegally and without authorization, intercepted, received and exhibited, or otherwise assisted in the unauthorized interception, reception or exhibition" of the content and substance of its Satellite Programming; (2) violated 18 U.S.C. § 2511 by "intentionally intercept[ing], endeavor[ing] to intercept, or procur[ing] other persons to intercept electronic communications from DIRECTV" and by "disclos[ing] or endeavor[ing] to disclose to others the content of electronic communications" when it knew or should have known "the information was obtained through the interception"; and (3) converted "DIRECTV's property for [its] own commercial use and benefit" ([Filing No. 54-1 at 3](), 7-9, 14, 18-20). DirecTV alleged that it was damaged by MCI's actions because "(a) DIRECTV has been denied subscription fees for commercial use of its Satellite Programming; (b) DIRECTV's sales revenues have been reduced through Defendants' unfair competition; (c) DIRECTV's propriety rights in the Satellite Programming have been impaired" ([Filing No. 54-1 at 6](), 17). DirecTV further asserted that its "goodwill and reputation have been usurped by [MCI]" as a result of its violations of the CCPA, while MCI gained unjust profits and goodwill by transmitting the Satellite Programming commercially without authorization ([Filing No. 54-1 at 7-8](), 18-19).

Based on DirecTV's claims, MCI requested that Society defend and indemnify it in relation to the DirecTV Action ([Filing No. 54-4 at 3]()). Despite MCI's request, Society refused to defend MCI in the DirecTV Action on February 10, 2015, stating that the damages claimed by DirecTV were not covered by the Policy because none of the damages claimed by DirecTV meet the definitions of "bodily injury," "property damage," or "personal and advertising injury" as defined by the Policy ([Filing No. 54-7 at 1](); [Filing No. 68-2 at 1]()). Society further stated that because DirecTV alleged that MCI's actions were intentional, they cannot meet the Policy's definition of

an "occurrence," as required for coverage of claims for "property damage" (Filing No. 54-7 at 1; Filing No. 68-2 at 1). On April 2, 2015, counsel for MCI responded to Society's letter refusing to defend MCI in the DirecTV Action by arguing that because DirecTV claimed that MCI displayed or published the Satellite Programming without authorization and negatively impaired DirecTV's reputation and goodwill, DirecTV sufficiently claimed libel, slander, defamation, disparagement, and invasion of privacy to meet the definition of "personal and advertising injury" (Filing No. 68-3 at 2-5). Counsel for Society responded to MCI's renewed request for coverage under the Policy on May 8, 2015 and informed MCI that Society did not interpret any of DirecTV's allegations to meet the Policy's definition of "personal and advertising injury" because DirecTV's complaints merely "allege the unauthorized communication and dissemination of satellite TV signals to [MCI's] customers at [MCI's] restaurants" (Filing No. 68-4 at 2-5). The parties continued to exchange letters to address these issues through July 2016 (*See* Filing No. 68-5; Filing No. 68-6; Filing No. 68-7; Filing No. 68-8).

**C. The Current Proceedings**

On August 11, 2016, MCI initiated this lawsuit against Society in Marion County, Indiana State court (Filing No. 10 at 8-14). MCI alleged that Society breached the Policy, its duties to defend and indemnify MCI, its fiduciary duties, and its duties of good faith and fair dealing, by failing to investigate and defend MCI in the DirecTV Action (Filing No. 10 at 8-14). Society removed the litigation to this Court on September 16, 2016 (Filing No. 1), and filed its Answer to MCI's original Complaint on October 21, 2016 (Filing No. 12). On April 11, 2017, MCI and Society entered into a settlement agreement, through which the parties agreed to dismiss all of MCI's claims against Society with prejudice, other than its breach of contract claim[3] (Filing No.

---

[3] The parties' settlement agreement also precluded MCI from pursuing its breach of contract claim under a theory of bad faith (Filing No. 30).

7

29; Filing No. 30). While the parties' settlement was pending, the DirecTV Action was dismissed on May 9, 2017 (Filing No. 34-1 at 3; Filing No. 54-5 at 3). The Court approved the parties' settlement agreement on May 15, 2017, and dismissed Counts II-V of MCI's original Complaint with prejudice, leaving MCI's breach of contract claim as the only unresolved claim in this action (Filing No. 30).

MCI filed its Motion for Summary Judgment on July 28, 2017, claiming that the Policy obligates Society to defend and indemnify it in relation to the DirecTV Action pursuant to its coverage of claims for personal and advertising injuries and property damage and the Policy's Endorsement (Filing No. 55). MCI notes that its alleged misappropriation of DirecTV's Satellite Programming constituted "oral or written publication of material" that slandered, libeled, defamed, or disparaged DirecTV's "goods, products or services" and that violated DirecTV's "rights of privacy," and thus meets the definition of "personal and advertising injury" and the requirements of coverage under the Endorsement (Filing No. 55 at 17-24). MCI argues that DirecTV alleged an invasion of privacy because its Satellite Programming, which is communicated through encrypted electronic signals, constitutes a trade secret for which DirecTV has a right of privacy (Filing No. 55 at 21-23). With respect to its claims regarding slander, libel, defamation, and disparagement, MCI asserts that because DirecTV alleged it sustained damage to its reputation and goodwill as a result of MCI's actions, MCI is entitled to coverage for "personal and advertising injuries" and coverage under the Endorsement (Filing No. 55 at 17-21, 23-24, 28-31). MCI also contends that coverage under the Endorsement is proper because its alleged actions were carried out by MCI employees and are therefore "employment-related" (Filing No. 55 at 17-18).

Furthermore, MCI argues that DirecTV claimed "property damage" in the DirecTV Action, justifying coverage under the Policy (Filing No. 55 at 24-28). Specifically, MCI states that

DirecTV's allegations demonstrate that MCI converted the use of its transmission equipment and caused DirecTV to lose the ability to use its equipment ([Filing No. 55 at 24-25](#)).  Additionally, MCI contends that DirecTV's property damage claims are covered under the Policy because the loss of use of its transmission equipment was unintentional, and therefore meets the definition of an accident or "occurrence" ([Filing No. 55 at 25-28](#)).

In response, Society filed its Cross Motion for Summary Judgment on August 31, 2017 ([Filing No. 66](#)).  Society argues that it cannot be required to indemnify or defend MCI in connection with the DirecTV Action because none of DirecTV's allegations, which assert violations of the CCPA and 18 U.S.C. § 2511 and civil conversion, meet the definitions of "wrongful acts," "personal and advertising injury," or "property damage;" therefore, none of the DirecTV Action claims fall within the coverages described in the Policy ([Filing No. 66 at 19-23](#), 25, 28-32).  Society further contends that any damages for which MCI may have been liable in the DirecTV Action for "personal and advertising injuries" are excluded under the exclusions for "Criminal Acts" and "Recording And Distributing Material Or Information In Violation Of Law" ([Filing No. 66 at 26-28](#)).

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489-90 (7th Cir. 2007).  In ruling on a motion for summary

9

judgment, the Court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox Cty. Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III. DISCUSSION

Under Indiana law, the interpretation of an insurance policy presents a question of law for the Court to decide. *See Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 40 F.3d 146, 151 (7th Cir. 1994) (citing *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992)); *Jim Barna Log Sys. Midwest, Inc. v. Gen. Cas. Ins. Co.*, 791 N.E.2d 816, 823 (Ind. Ct. App. 2003) ("The construction of an insurance contract is a question of law for which summary judgment is particularly

10

appropriate."). A finder of fact is only required to determine the facts serving as the basis of an insurance policy when the policy at issue "is ambiguous and its interpretation requires extrinsic evidence." *Tate*, 587 N.E.2d at 668.

"Clear and unambiguous policy language is given its ordinary meaning" to determine the parties' intent at the time the policy was made. *Holiday Hosp. Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574, 577-78 (Ind. 2013) (citation omitted). When the language of a policy is ambiguous, the Court will generally resolve such ambiguities in favor of the insured "but will not do so if such an interpretation fails to harmonize the provisions of the contract as a whole." *Id*. at 578 (citations omitted). "[A]n ambiguity exists where the provision is susceptible to more than one reasonable interpretation"; a failure to define a policy term or a disagreement about a term's meaning "does not necessarily make that term ambiguous." *Id*. (citations and quotation marks omitted).

In this case, MCI asserts that the costs it incurred through the DirecTV Action are covered based on three coverages provided by the Policy: (1) the Endorsement, (2) personal and advertising injury liability coverage, and (3) property damage liability coverage (Filing No. 55). The Court now addresses each of these coverages.

**A. Coverage under the Endorsement and for Personal and Advertising Injury Damages**

MCI asserts that Society is required to cover its costs and expenses associated with the DirecTV Action because DirecTV claimed damages that fall within the scope of the Endorsement and the Policy's "personal and advertising injury" coverage (Filing No. 55 at 17-24, 28-31). In particular, MCI contends that it is entitled to coverage under these provisions because DirecTV asserted claims against MCI relating to libel, slander, defamation, disparagement, and invasion of privacy in the DirecTV Action (Filing No. 55 at 17-24, 28-31).

Under the Endorsement, Society is obligated to cover MCI for "damages resulting from a 'wrongful act' to which [the Policy] applies," including "[l]ibel, slander, invasion of privacy, defamation or humiliation" ([Filing No. 12-1 at 30-31](Filing No. 12-1 at 30-31)). The Policy also defines "personal and advertising injury" to include injuries arising out of "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services" or "[o]ral or written publication, in any manner, of material that violates a person's right to privacy" ([Filing No. 12-1 at 86](Filing No. 12-1 at 86)).

Although MCI contends that DirecTV's complaints sufficiently state defamation[4] and invasion of privacy claims, the Court disagrees. A defamatory statement is a statement that tends to harm a person's reputation by lowering the community's estimation of the person or by deterring third parties from dealing or associating with the person. *See Kelley v. Tanoos*, 865 N.E.2d 593, 596 (Ind. 2007). *See also*, *Lovings v. Thomas*, 805 N.E.2d 442, 447 (Ind. Ct. App. 2004) ("Defamation is that which tends to injure reputation or to diminish esteem, respect, good will, or confidence in the plaintiff, or excite derogatory feelings or opinions about the plaintiff."). To maintain an action for defamation under Indiana law, a "plaintiff must demonstrate (1) a communication with defamatory imputation; (2) malice; (3) publication; and (4) damages." *Kelley*, 865 N.E.2d at 596-97. Furthermore, any statement that is considered defamatory must also be false. *Trail v. Boys and Girls Clubs of Nw. Ind.*, 845 N.E.2d 130, 136 (Ind. 2006). While DirecTV did allege that its reputation and goodwill were harmed by MCI's actions, it did not allege that MCI made any false statements or that any statements were made with malice. In fact, DirecTV did not assert that MCI made any statements about it at all. Instead, DirecTV merely claimed that its reputation and goodwill were damaged because MCI allowed viewers who would

---

[4] MCI acknowledges that the definition of defamation comprises the torts of slander and libel ([Filing No. 55 at 20](Filing No. 55 at 20)).

have otherwise only had access to the Satellite Programming by paying a subscription fee to view such programming in its commercial establishments without authorization ([Filing No. 54-1 at 7-8](#)). Furthermore, DirecTV in no way claimed that MCI "disparaged" it because it did not claim that MCI made any statement that discredited or lowered DirecTV's esteem by transmitting the Satellite Programming without authorization. *See Ind. Ins. Co. v. N. Vermillion Cmty. Sch. Corp.*, 665 N.E.2d 630, 635 (Ind. Ct. App. 1996) (defining "disparage" as "to 'lower in esteem; discredit'").

Moreover, the DirecTV Action does not allege any claim for invasion of privacy. Indiana law recognizes four distinct injuries within the tort of invasion of privacy: "(1) intrusion upon seclusion, (2) appropriation of likeness, (3) public disclosure of private facts, and (4) false-light publicity." *J.H. v. St. Vincent Hosp. and Health Care Ctr. Inc.*, 19 N.E.3d 811, 815 (Ind. Ct. App. 2014) (citing *Doe v. Methodist Hosp.*, 690 N.E.2d 681, 684 (Ind. 1997)). Additionally, under Indiana law, "'[a] corporation, partnership or unincorporated association has no personal right of privacy.'" *Felsher v. Univ. of Evansville*, 755 N.E.2d 589, 594 (Ind. 2001) (quoting Restatement (Second) of Torts, § 652I cmt. c).

MCI contends that DirecTV's privacy rights were impaired because the transmission of the Satellite Programs constituted exposure of trade secrets. The Court disagrees. Trade secrets are considered proprietary information, rather than privacy rights. *See Landeen v. PhoneBILLit, Inc.*, 519 F. Supp. 2d 844, 865 (S.D. Ind. 2007) (stating that trade secrets by definition must derive independent economic value); *see also*, *U.S. Land Serv. Inc. v. U.S. Surveyor, Inc.*, 826 N.E.2d 49, 63-64 (Ind. Ct. App. 2005). Additionally, even if DirecTV had a privacy interest in its trade secrets, DirecTV in no way seeks to maintain secrecy over the Satellite Programming. In order to establish a proprietary right in a trade secret, one must demonstrate efforts to maintain its secrecy.

*See Zemco Mfg., Inc. v. Navistar Int'l Transp. Corp.*, 759 N.E.2d 239, 246 (Ind. Ct. App. 2001) (citing Ind. Code § 24-2-3-2) ("By definition, information is a trade secret only if it is the subject of reasonable efforts to maintain secrecy"); *see also*, *Tecnomatic, S.P.A. v. Remy, Inc.*, 954 F. Supp. 2d 860, 865 (S.D. Ind. 2013); *Landeen*, 519 F. Supp. 2d at 865-66. However, the sole purpose of the Satellite Programming is for it to be viewed by DirecTV's commercial and residential satellite subscribers, and DirecTV's goal is to obtain as many subscribers to their Satellite Programs as possible. Although DirecTV does encrypt the Satellite Programming, such encryption efforts are meant merely to control who can view the Satellite Programming to maintain its value and are not an attempt to maintain secrecy. As such, the Court concludes that the DirecTV Action does not seek any damages in relation to an invasion of privacy.

Because none of the allegations within the DirecTV Action state claims for libel, slander, defamation, disparagement, or invasion of privacy, Society is not required to indemnify or defend MCI under either the Endorsement or the "personal and advertising injury" provisions of the Policy. MCI also claims that DirecTV's allegations are "employment-related," as required by the Endorsement, because they were performed by employees of MCI (Filing No. 55 at 17-18). However, the Court need not determine whether such allegations are "employment-related" because MCI has failed to demonstrate that its damages from the DirecTV Action arose out of a "wrongful act" as defined by the Endorsement. MCI is therefore precluded from recovering any damages pursuant to the Endorsement.

**B. Policy Exclusions**

Even if MCI could demonstrate that DirecTV asserted claims to recover for "personal and advertising injuries," MCI still could not recover its costs for such damages from Society because DirecTV's claims are specifically excluded by the Policy. Coverage exclusions are typically

14

utilized by insurers as affirmative defenses. *See Westfield Ins. Co. v. Orthopedic and Sports Medicine Ctr. of N. Ind., Inc.*, 247 F. Supp. 3d 958, 972 (N.D. Ind. 2017). "'Generally, insurers are allowed to limit liability in any manner which is not inconsistent with public policy.'" *Id.* (quoting *Hoosier Ins. Co. v. Audiology Found. of Am.*, 745 N.E.2d 300, 309 (Ind. Ct. App. 2001)). Nevertheless, "exclusions must be plainly expressed in the policy, and any doubts as to coverage will be construed against the insurer." *Westfield Ins.*, 247 F. Supp. 3d at 972 (citing *Hoosier Ins.*, 745 N.E.2d at 309).

The "Criminal Acts" exclusion states that the Policy will not cover "'[p]ersonal and advertising injury' arising out of a criminal act committed by or at the direction of [MCI]" (Filing No. 12-1 at 79-80). Additionally, the "Recording And Distribution Of Material Or Information In Violation Of Law" exclusion provides that the Policy does not apply to "'[p]ersonal and advertising injury' arising directly or indirectly out of any action or omission that violates or is alleged to violate … [a]ny federal, state, or local statute, ordinance or regulation … that addresses, prohibits, or limits the … dissemination, … transmitting, communicating or distribution of material or information" (Filing No. 12-1 at 79-80). Because DirecTV alleged that MCI transmitted its Satellite Programming in violation of the CCPA and 18 U.S.C. § 2511, which allows for criminal sanctions, its allegations fall within the scope of both the "Criminal Acts" and "Recording And Distribution Of Material Or Information In Violation Of Law" exclusions.

**C. Property Damage Coverage**

MCI also claims that Society must cover the costs and expenses it incurred through the DirecTV Action because the DirecTV Action stated claims for "property damage" (Filing No. 55 at 24-28). MCI specifically argues that DirecTV alleges that it sustained "property damage" through loss of use of its physical transmission equipment (Filing No. 55 at 24-25). However,

15

DirecTV did not claim any damage associated with transmission equipment in the DirecTV Action. Although DirecTV alleged that it was possible for residential subscribers to remove their equipment and reinstall it in commercial establishments without DirecTV's knowledge, allowing those residential subscribers to access DirecTV's Satellite Programs for commercial gain without paying commercial subscription fees ([Filing No. 54-1 at 5](), 16), DirecTV in no way alleged that MCI had manipulated its equipment in such a manner.

Furthermore, DirecTV's complaints make clear that the proprietary interests at issue are its interests in its Satellite Programming and not in its transmission equipment (See [Filing No. 54-1 at 6]()). Because the Policy excludes "electronic data," such as the Satellite Programming, from its definition of tangible property subject to "property damage" ([Filing No. 12-1 at 86]()), Society is not obligated to insure MCI for any damages resulting from damage to DirecTV's Satellite Programming.

Moreover, none of the damages claimed by DirecTV in the DirecTV Action were the result of an "occurrence" as defined by the Policy. In order for "property damages" to be covered under the Policy, the "property damage" must be "caused by an 'occurrence,'" which is defined as an "accident" ([Filing No. 12-1 at 85]()). While MCI claims its inability to use DirecTV's transmission equipment was the result of an accident, the Declaration of William Spina clearly indicates that MCI intended to transmit DirecTV's Satellite Programming in its restaurants for commercial gain ([Filing No. 54-5]()). Because DirecTV's claims for damages are based on MCI's commercial transmission of the Satellite Programming, rather than their inability to use their transmission equipment, and because MCI intended to transmit the Satellite Programming for its own commercial gain, no "accident" or "occurrence" could have taken place to support coverage for

claims of "property damage" under the Policy. Therefore, the Policy fails to provide any coverage to MCI for damages it incurred as a result of the DirecTV Action.

## IV. CONCLUSION

For the reasons stated above, the Court **DENIES** MCI's Motion for Summary Judgment ([Filing No. 55](Filing No. 55)) and **GRANTS** Society's Cross Motion for Summary Judgment ([Filing No. 65](Filing No. 65)). Judgment will be entered accordingly.

**SO ORDERED.**

Date: 3/31/2018

*signature*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Jason R. Fathallah
von BRIESEN & ROPER, s.c.
jfathall@vonbriesen.com

April M. Jay
OVERHAUSER LAW OFFICES LLC
ajay@overhauser.com

Nelson A. Nettles
LEBLANC NETTLES DAVIS
nelson@indianalawgroup.com

Paul B. Overhauser
OVERHAUSER LAW OFFICES, LLC
poverhauser@overhauser.com

Heidi L. Vogt
von BRIESEN & ROPER, s.c.
hvogt@vonbriesen.com